**Opinion issued July 5, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00082-CR

———————————

**CHRISTOPHER RIOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 14**
**Harris County, Texas**
**Trial Court Case No. 1547542**

---

## OPINION ON REHEARING

Christopher Rios filed a motion for rehearing of our memorandum opinion of December 29, 2011. We grant Rios's motion for rehearing, withdraw our opinion and judgment, and issue the following in their stead.

Rios pleaded guilty to a class B misdemeanor charge of driving while intoxicated. The trial court initially assessed punishment at a $200 fine and 180 days' confinement, suspended the sentence, and placed Rios on community supervision for one year; however, the trial court later granted the State's motion to revoke community supervision and sentenced Rios to 120 days' confinement. When the State informed Rios that the breath test results showing his blood alcohol concentration to be approximately twice the legal limit were invalid, Rios applied for and was denied post-conviction habeas corpus relief. On appeal, Rios contends that the trial court's ruling was in error. Because we have reviewed the record and concluded that the trial court abused its discretion in denying Rios habeas relief, we reverse.

**Background**

At around 2:00 a.m. on August 31, 2008, police officers stopped Rios after he failed to stop for a stop signal. He explained that mechanical problems with his vehicle caused him to "run" the stop signal. After speaking with officers and performing field sobriety tests, which were recorded on video, Rios was arrested for driving while intoxicated. Rios provided breath samples for an intoxilyzer test that showed his blood alcohol concentration at 0.149 and 0.161. The record before this Court does not show how much time elapsed between the time Rios was pulled over and the time he provided the breath samples.

2

Rios pleaded guilty pursuant to a plea bargain. He was sentenced to 180 days' confinement and fined $200, but the trial court suspended his sentence and placed him on community supervision for one year. The conditions of his community supervision prohibited Rios from using alcoholic beverages, mandated that he submit to random alcohol tests, and required him to place an ignition interlock device on his vehicle. Alleging a number of violations of these conditions, the State later moved to revoke his community supervision.

Before the hearing on the State's motion to revoke Rios's community supervision, the State discovered that the technician in charge of the intoxilyzer used to test Rios's blood alcohol concentration had falsified the calibration records for that machine. The State informed Rios of these facts, and Rios applied for habeas relief on the sole ground that his plea was involuntary because he relied on the breath test results showing he had a blood alcohol concentration of approximately twice the legal limit when he decided to plead guilty. The trial court entered a judgment revoking community supervision and sentencing Rios to 120 days in jail and then conducted the habeas hearing less than one month later.

At the habeas hearing, the State and Rios offered a stipulation of evidence of the invalidity of the breath test results. The stipulation specifically states that the intoxilyzer test "was invalid because the technical supervisor who maintained the intoxilyzer that was used . . . had falsified the calibration records." The stipulation

3

also recites an agreement in anticipation of dismissal: "[Rios] . . . and the State, have entered into this stipulation of the evidence serving as the basis of the vacating of judgment and subsequent dismissal of the subject charge against [Rios]." When the trial court stated that it would not necessarily approve the dismissal and asked if there was any other evidence, the prosecutor informed the trial court that a video of Rios's performance on the field sobriety tests existed but was located "downstairs" and could not be vouched for. The trial court stated that the tape should not be destroyed and "would remain as part of the Appellate Record for this case." When the trial court asked if there was any other evidence in support of the request, and indicated that he was inclined to deny habeas relief, Rios offered to testify. He testified that he pleaded guilty based on the breath test results and that without the test results he would not have entered a plea of guilty.

The trial court, not the State, then questioned Rios. Rios admitted that he had consumed alcohol on the night of his arrest, that he was represented by counsel when he entered into the plea, that he discussed the plea with his attorney, and that he signed the preprinted plea forms that the court "marked . . . for Appellate purposes as Court's Exhibit . . . 1, that will go up with the Appellate Record[.]" He also testified that the breath test results were discussed at the hearing on his plea,[1]

---

[1]     While the trial court limited its questioning to the terms of the written plea itself, Rios made it clear that the breath test results were discussed at the plea hearing. The results showed an alcohol concentration above 0.15. The trial court had to be

4

but conceded that the plea itself did not mention the intoxilyzer results. He admitted that he violated the terms of community supervision in a number of ways, including violating the prohibition against alcohol consumption and failing to attend required meetings with his community supervision officer, although he testified that he always tried to call and explain why he could not attend. There was no other evidence regarding the negotiations of the plea and whether its terms were favorable. The State offered no evidence in opposition to the request for habeas relief. Indeed, the State did not ask a question or voice any opposition to the request.

At the conclusion of his questioning, the trial court announced that because Rios had failed to keep his promise regarding complying with the terms of probation, Rios had "established [a] pattern of being less than truthful with the court," and the court did not find Rios credible on "the circumstances of [his] plea," particularly in light of his plea of guilty. The judge remarked "it [was] quite *possible*" that Rios had "lost the normal use of [his] mental and physical faculties" and that the record did not contradict that. (Emphasis added.) The trial court then denied habeas relief in open court and by written order on January 3, 2011.

informed of these results to comply with the statutory mandate to require the defendant to install the ignition interlock on his vehicle as part of the conditions of community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 13(i) (West Supp. 2011). Thus, Rios's testimony that the breath test results were discussed at the hearing is supported by the procedure envisioned by the statute.

5

A few weeks later, the trial court signed findings of fact and conclusions of law in support of its ruling. In these findings of fact, the trial court concluded that Rios was not credible and stated that it did not believe Rios's testimony regarding his motivation for pleading guilty. The trial court also noted that the information alleged only that Rios was intoxicated, but did not specify a blood alcohol concentration or otherwise refer to the breath test results. Although the issue of intoxication was not before the trial court at the time of the hearing and the prosecution could not vouch for and did not offer the video as evidence, the trial court specifically stated in its subsequent fact findings that the video supported a finding that Rios did not have the normal use of his mental or physical faculties on the night in question. *See* TEX. PENAL CODE ANN. § 49.01(2) (West 2011) (defining "[i]ntoxicated" as both "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body" or "having an alcohol concentration of 0.08 or more").[2] The trial court further found that Rios was aware of the evidence against him and pleaded guilty in order to "secure a favorable plea

---

[2]  The trial court found that Rios's "performance on video of the field sobriety tests demonstrated sufficient evidence that a reasonable jury could have found him guilty of the offense of which he was accused." The video is of poor quality—the sound, in particular, cuts in and out and is often difficult to follow. Reasonable people, after viewing the video, could come to different conclusions concerning its significance. But the trial court could not rely on the videotape because it was never admitted into evidence.

bargain and for no other reason." The trial court ultimately concluded that Rios's guilty plea was "knowingly and voluntarily entered."

## Standard of Review

An applicant seeking habeas corpus relief on the basis of an involuntary guilty plea is required to prove his claim by a preponderance of the evidence, not beyond a reasonable doubt. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In our review of the trial court's ruling on Rios's habeas claim, we must view the record evidence in the light most favorable to the trial court's ruling and uphold the ruling absent an abuse of discretion. *See id.* "We afford almost total deference to a trial court's factual findings in habeas proceedings, especially when those findings are based upon credibility and demeanor." *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004). The trial court, as the factfinder in the underlying habeas proceeding, could accept or reject all or any part of Rios's testimony. *Ex parte Peterson*, 117 S.W.3d 804, 819 n.68 (Tex. Crim. App. 2003) (citing *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993)), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

A trial court abuses its discretion by acting without reference to any guiding rules or principles or, in other words, acting arbitrarily or unreasonably. *Ex parte Alakayi*, 102 S.W.3d 426, 430 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (citing *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993)). And although

we afford almost total deference to a trial court's factual findings, we may reject those findings when they are not supported by the record. *White*, 160 S.W.3d at 50; *Ex parte Briseno*, 135 S.W.3d 1, 13 (Tex. Crim. App. 2004).

**Rios's plea was involuntary**

Rios argues that his guilty plea was involuntary because he did not know that the breath test results were inadmissible. According to Rios, but for that erroneous information, he would not have pleaded guilty.

"A guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the right not to incriminate oneself." *Kniatt*, 206 S.W.3d at 664. "The 'overriding concern' in reviewing the constitutional validity of a guilty plea is 'whether a defendant has been deprived of due process and due course of law.'" *Holland v. State*, 761 S.W.2d 307, 322 (Tex. Crim. App. 1988) (quoting *Ex parte Lewis*, 587 S.W.2d 697, 700 (Tex. Crim. App. 1979)). To satisfy due process, a guilty plea "must be entered knowingly, intelligently, and voluntarily." *Kniatt*, 206 S.W.3d at 664. We consider the entire record in determining the voluntariness of a guilty plea. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975); *Burke v. State*, 80 S.W.3d 82, 93 (Tex. App.—Fort Worth 2002, no pet.).

When, as here, the record reflects that the defendant was duly admonished by the trial court before entering a guilty plea, it presents a prima facie showing that the plea was both knowing and voluntary. *Martinez*, 981 S.W.2d at 197. The burden then shifts to the defendant to show he entered the plea without understanding the consequences of his actions and was harmed as a result. *Id.* Rios's sworn representation that his guilty plea was voluntary "'constitutes a formidable barrier in [this] subsequent collateral proceeding.'" *Kniatt*, 206 S.W.3d at 664 (quoting *Blackledge v. Allison*, 431 U.S. 63, 73−74, 97 S. Ct. 1621, 1629 (1977)); *see Labib v. State*, 239 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.). However, a plea is involuntary when it is "induced by threats, misrepresentations, or improper promises." *Kniatt*, 206 S.W.3d at 664 (citing *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970)).

Here, it is undisputed that "the technical supervisor who maintained the intoxilyzer . . . had falsified the calibration records for that intoxilyzer during the period which [Rios's] test was conducted." Thus, the technical supervisor—an agent of the State—affirmatively misrepresented the scientific validity, and therefore the legal admissibility, of Rios's breath test results. *See, e.g.*, *Harrell v. State*, 725 S.W.2d 208, 209–10 (Tex. Crim. App. 1986) (providing predicate for admissibility of breath test). And although the prosecutor did not know that the State presented Rios with falsified evidence from an agent of the State, the

9

prosecutor's lack of knowledge of the misrepresentation is irrelevant. *See Kyles v. Whitley*, 514 U.S. 419, 437–38, 115 S. Ct. 1555, 1567 (1995) (prosecutors must not only disclose information within their own personal knowledge but have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); *Ex parte Chabot*, 300 S.W.3d 768, 772 (Tex. Crim. App. 2009) (agreeing with convicting court that conviction based on perjured testimony violated defendant's due process rights, notwithstanding that State had no knowledge of perjured testimony at time of trial).

Furthermore, Rios testified that he would not have pleaded guilty but for the breath test results. Although the trial court in its findings of fact found that Rios was not credible, the trial court also expressly stated that its conclusion was based in part on Rios's failure to comply with the conditions of community supervision included as part of the terms of his plea bargain. Such after-the-fact failures do not reflect a lack of credibility when Rios agreed to these conditions at the time of the plea. To show dishonesty, the evidence had to show that when Rios made these promises, he had no intention of keeping them. *Cf. Schindler v. Austwell Farmers*

10

*Co-op.*, 841 S.W.2d 853, 854 (Tex. 1992) ("For a promise of future performance to be the basis of actionable fraud, it must have been false at the time it was made."). Not only is there no evidence of such intent, but such intent is highly unlikely because non-compliance exposed him to the risk of imprisonment. These facts, therefore, do not support the trial court's credibility determination.[3]

While a guilty plea is a formidable barrier to a subsequent collateral proceeding, it must only be surpassed by a preponderance of the evidence, and Rios satisfied that burden. *See Kniatt*, 206 S.W.3d at 664. At the time of the original plea, the State represented to Rios that it had valid evidence which appeared to any objective person to be formidable: the results of an intoxilyzer test, with two readings nearly double the legal limit. But that was an affirmative misrepresentation by an agent of the State, because the technical supervisor knew the evidence was not valid. Further, there was no evidence to contradict Rios's testimony that his plea was based on the validity of the breath test results, and

---

[3] The trial court also stated that Rios's testimony that he would not have entered a guilty plea had he not been confronted with the breath test results was not credible because it was "possible" that he did not have the normal use of his faculties on the night in question, and that Rios had not disproved the possibility. But the State offered no evidence of Rios's impairment at the hearing so there was no reason for Rios to disprove this speculative possibility. The trial court announced its ruling before it watched the video. Its subsequent viewing of the video cannot support its conclusion here because the video was never offered or admitted into evidence. Thus, this evidence also does not support the trial court's credibility determination.

breath test results showing a blood alcohol concentration double the legal limit would be strong evidence that a criminal defense lawyer would have to discuss with the defendant and would influence a defendant's decision of whether to accept a plea.

Finally, the State not only did not oppose habeas relief but entered into a stipulation that the technician lied, that the breath test results were unreliable, and that this tainted evidence would serve as a basis for vacating and dismissing the charges against Rios. Based on this stipulation, the lack of support for the trial court's credibility determination, and Rios's testimony, the trial court abused its discretion by refusing to grant relief and vacate the underlying judgment.

The trial court therefore erred in denying Rios habeas relief. *Cf. Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001) (trial court does not abuse its discretion by overruling new trial motion when evidence adduced at hearing on motion is conflicting); *Ex parte Shah*, No. 01-03-00789-CR, 2004 WL 36217, at *2 (Tex. App.—Houston [1st Dist.] Jan. 8, 2004, pet. ref'd) (mem. op., not designated for publication) (no abuse of discretion by trial court that was presented with conflicting evidence in habeas proceeding); *see also Ex Parte Bennett*, No. AP-76330, 2010 WL 1697559, at *1 (Tex. Crim. App. April 28, 2010) (not designated for publication) (citing *Ex parte Huerta*, 692 S.W.2d 681 (Tex. Crim. App. 1985), and holding that applicant was entitled to habeas relief from driving

while intoxicated conviction because of same misrepresentation by same state agent as in this case); *Ex parte Lewis*, 587 S.W.2d at 703 (stating that "a defendant and his attorney cannot make an intelligent decision on whether to plead guilty when they have not received favorable information that is in the State's file to which they are entitled" and that "a showing of the State's failure to disclose favorable information before entry of a guilty plea leads as a matter of law to the conclusion that the plea was not knowingly and intelligently made.").

We sustain Rios's sole issue.

## Conclusion

Rios is entitled to habeas corpus relief. Consequently, we reverse the order of the trial court and remand this case to the trial court with instructions that the judgment of conviction be set aside and for further proceedings consistent with this opinion.


                                        Harvey Brown
                                        Justice

Panel consists of Chief Justice Radack and Justices Sharp and Brown.

Justice Sharp, concurring. Concurring opinion to follow.

Publish.  TEX. R. APP. P. 47.2(b).

13